IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| HAL LEE WEST, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. CV05-514-S-MHW |
| | ) | |
| vs. | ) | **MEMORANDUM DECISION** |
| | ) | **AND ORDER** |
| THOMAS BEAUCLAIR, JEFF | ) | |
| CONWAY, SGT. DOSER, ASSIST. | ) | |
| WARDEN VALDEZ, CORRECTIONS | ) | |
| CORPORATION OF AMERICA, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Pending before the Court are Defendants' Motion for Summary Judgment (Docket No. 43), Defendants' Motion for Sanctions (Docket No. 46), and Plaintiff's Motion for Stay (Docket No. 50). All parties have consented to the jurisdiction of a United States Magistrate Judge to enter final orders in this case (Docket No. 22). Having reviewed the record, and the arguments of the parties, the Court enters the following Order.

**MEMORANDUM DECISION AND ORDER 1**

## PLAINTIFF'S MOTION TO STAY

On May 14, 2007, Plaintiff requested that the Court stay this action, alleging that his physical condition had deteriorated to the point where he could no longer pursue this case. The Court previously rejected similar allegations in this case in the context of denying Plaintiff's Motion for Appointment of Counsel.

Plaintiff now argues that Judge Boyle determined that Plaintiff's physical condition warranted appointment of counsel in another pending federal court case, CV06-51-S-LMB, *West v. Correctional Medical Services* and, therefore, this Court should reconsider its decision to require Plaintiff to proceed on his own. This Court has reviewed the filings in Plaintiff's other case, and sees nothing regarding Plaintiff's *current* condition would cause it to reconsider its previous ruling. The defendants in the other case recently submitted medical records supporting the position that Plaintiff is capable of litigating his case and asked Judge Boyle in reconsider his decision to stay that case and to appoint counsel. Judge Boyle issued an order on July 23, 2007, noting it appeared that "good cause exists to grant the Motion [to Reconsider]" and that Plaintiff appeared "capable of filing an opposition to the Motion on his own." (See Order of July 23, 2007 in CV06-51-S-LMB (Docket No. 53)). In response to the Order, Plaintiff filed a brief that was adequate in every respect for a pro se prisoner litigant. Similarly, Plaintiff's filings in this case continue to be adequate to protect his interests. Based on all of these facts, the Court shall deny Plaintiff's Motion for Stay in this case.

**MEMORANDUM DECISION AND ORDER  2**

# DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## A.    Plaintiff's Failure to Respond

Plaintiff failed to file a timely response to Defendants' Motion for Summary Judgment that was filed on March 7, 2007.  The Court allowed him an extension of time, which expired June 7, 2007.  Plaintiff has filed no response in the additional five months that have passed since his deadline expired.

The discovery deadline in this case was May 31, 2007.  Therefore, Plaintiff is not entitled to any further discovery on the issues pending before the Court in the Summary Judgment Motion.  Having reviewed the Motion, the Court concludes that summary judgment is appropriate and shall conditionally grant the Motion.  Plaintiff shall have an additional fourteen (14) days after entry of this Order in which to file a response to the Motion if he wishes to do so.  In addition, Plaintiff may file a sur-reply (response) addressing Defendants' Reply in support of their Motion for Sanctions.

## B.    Standards of Law

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In a motion for summary judgment, the moving party bears the "initial burden of

**MEMORANDUM DECISION AND ORDER  3**

identifying for the court those portions of the record which demonstrate the absence of any genuine issues of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986)).  If the moving party points to portions of the record demonstrating that there appears to be no genuine issue of material fact as to claims or defenses at issue, the burden of production shifts to the non-moving party.  To meet its burden of production, the non-moving party "may not rest upon the mere allegations contained in his complaint, but he must set forth, by affidavits, exhibits or otherwise, specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56; *see T.W. Electric Serv.*, 809 F.2d at 630 (internal citation omitted).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the non-moving party.  All inferences that can be drawn from the evidence must be drawn in a light most favorable to the nonmoving party.  *T.W. Elec. Serv.*, 809 F.2d at 630-31 (internal citation omitted).

Rule 56(c) requires the Court to enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  The existence of a scintilla of evidence in support of the non-moving party's position is insufficient.  Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]."  *Anderson v. Liberty Lobby*, 477 U.S. at 252.

**MEMORANDUM DECISION AND ORDER  4**

C.   Discussion

Due Process requires that a prisoner charged with a disciplinary violation have the following minimum protections: "(1) advance written notice of the charges, (2) an opportunity to call witnesses provided there is no conflict with institutional safety and correctional goals, and (3) a written statement outlining the evidence relied on and the reasons for the disciplinary action." *Hines v. Gomez*, 108 F.3d 265, 268 (9th Cir. 1997) (citing *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974)).  In *Ponte v. Real*, 471 U.S. 491, 498, 500 (1985), the Supreme Court held that prison officials could not simply deny an inmate the right to call witnesses at a disciplinary hearing without adequate explanation.  *Id*.  However, such due process violations arising from prison disciplinary actions are not always cognizable.

Only claims involving a "liberty interest" are actionable.   In *Sandin v. Conner*, 515 U.S. 472, 487 (1995), the Court examined whether a prisoner had a liberty interest in not being confined in disciplinary segregation.  There, the Court held that, in order for a district court to determine whether there is such a liberty interest, it must analyze three factors:  (1) whether disciplinary segregation was essentially the same as discretionary forms of segregation;  (2) whether a comparison between the plaintiff's confinement and conditions in the general population showed that the plaintiff suffered no "major disruption in his environment";  and (3) whether the length of the plaintiff's sentence was affected.  *Id*., 515 U.S. at 486-87.  If these factors are not met, a court may find that there is no liberty interest in not being placed in disciplinary segregation, which results in a

**MEMORANDUM DECISION AND ORDER  5**

prisoner not being entitled to sue prison officials for due process violations arising from the disciplinary hearing.

In *Wilkinson v. Austin*, 125 S.Ct. 2384 (2005), the United States Supreme Court underscored the severity of the conditions required to meet the liberty interest test:

> For an inmate placed in OSP, almost all human contact is prohibited, even to the point that conversation is not permitted from cell to cell; the light, though it may be dimmed, is on for 24 hours; exercise is for 1 hour per day, but only in a small indoor room. Save perhaps for the especially severe limitations on all human contact, these conditions likely would apply to most solitary confinement facilities, but here there are two added components. First is the duration. Unlike the 30-day placement in *Sandin*, placement at OPS is indefinite and, after an initial 30-day review, is reviewed just annually. Second is that placement disqualifies an otherwise eligible inmate for parole consideration. *Austin I*, 189 F.Supp. 2d at 728. While any of these conditions standing alone might not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship within the correctional context. It follows that respondents have a liberty interest in avoiding assignment to OSP. *Sandin*, supra at 483.

*Id*. at 2394-95.  In *May v. Baldwin*, 109 F.3d 557 (9th Cir. 1997), *cert. denied*, 522 U.S. 921 (1997), the Ninth Circuit determined that pre-hearing administrative segregation does not constitute an "atypical and significant hardship," explaining that such placement "falls within the terms of confinement ordinarily contemplated by a sentence." *Id*. at 565.

The only exception to *Sandin* is that a prisoner may challenge a prison disciplinary action where an inmate has been found guilty of an offense without "a shred of evidence," because inmates have a Fourteenth Amendment substantive due process right to be free from punishment which is arbitrary and capricious. *See Burnsworth v. Gunderson*, 179 F.3d 771, 775 (9th Cir. 1999) (due process was violated when a prison

**MEMORANDUM DECISION AND ORDER  6**

disciplinary hearing board convicted an inmate of escape after that board held a hearing at which no shred of evidence of the inmate's guilt was presented, even if inmate demonstrated no cognizable liberty interest).

**D.     Facts**

On August 1, 2004, Plaintiff, an inmate housed at the Idaho Correctional Center (ICC), was served with a Disciplinary Offense Report (DOR) because Correctional Officer Frazer found a four-inch sharpened needle taped to the vent in Plaintiff's cell. Plaintiff was then placed in pre-hearing segregation. Plaintiff alleges that he suffered a total nervous breakdown and became suicidal as a result of being accused of the offense, and was placed in the medical unit and then in a suicide watch cell. He was then moved back to segregation. He alleges that as of the date of the hearing, August 12, 2004, he was still suffering from several mental and physical problems resulting from his reaction to being accused of the offense. *See Complaint* (Docket No. 3).

At the DOR hearing, it was undisputed that the needle had been found in Plaintiff's cell. *See Transcript of Hearing*, p. 11 (Docket No. 43-6). Plaintiff defended himself on the ground that, although the needle was hidden there, he did not have any knowledge of it. *Id*. Disciplinary Hearing Officer Doser found Plaintiff guilty of the offense, and imposed sanctions of five days in segregation and twenty extra duty hours. Plaintiff had already served six days in segregation. Therefore, he was given credit for time served and returned to the general population after the hearing.

Plaintiff alleges that losing his Dog Program position and his wages (and not being

**MEMORANDUM DECISION AND ORDER  7**

able to apply for other minimum-wage jobs at the prison) amounted to a significant and atypical hardship. He also argues that he now has a higher classification status, and has a DOR in his permanent record, which may affect his opportunity for parole..

**E.     Analysis**

The threshold question in this case is whether Plaintiff had a liberty interest in not being placed in segregation for five to six days and not losing the privileges and status he had earlier. The Court reviews the three factors set forth in *Sandin* to determine whether his sanctions were an atypical and significant hardship in relation to the ordinary incidents of prison life.

As to the first and second factors, Plaintiff has not alleged that the conditions of confinement in segregation were significantly different from those in the general population or that his confinement for six days in pre-hearing segregation worked a major disruption in his environment. In *Resnick v. Hayes*, 213 F.3d 443 (9th Cir. 2000), the Court concluded that the plaintiff had failed to establish a protected liberty interest in not being placed in pre-hearing segregation because he had "not alleged that his confinement, whether administrative or disciplinary, presented 'the type of atypical, significant deprivation [that] might conceivably create a liberty interest.'" *Id*. at 448 (citing *Sandin*, 515 U.S. at 486). To reach this conclusion, the Ninth Circuit Court stated: "In sum, so far as we know from his complaint, Plaintiff's placement and retention in the SHU were 'within the range of confinement to be normally expected' by prison inmates 'in relation to the ordinary incidents of prison life.'" *Id*. (citing *Sandin*, 515 U.S. at 486-87). As to

**MEMORANDUM DECISION AND ORDER  8**

the third factor, Plaintiff's total length of confinement was not actually affected by his placement in segregation.   Accordingly, the Court finds that Plaintiff has failed to satisfy the three *Sandin* factors.

Case law from other courts supports the Court's decision in this case that Plaintiff's allegations do not arise to the level of a liberty interest.  Rather, liberty "interests will be generally limited to freedom from restraint," as stated in *Sandin*, 515 U.S. at 484, and the conditions that will give rise to a liberty interest must be fairly extreme, as illustrated in *Wilkinson v. Austin, supra.*  Loss of a prison job is not an atypical and significant hardship, nor is loss of income from a prison job.  *Ahmed v. Fenesis*, 2007 WL 2746842 (D. Minn. 2007);  *Robinson v. Hastings*, 2006 WL 950185 (D. Ky. 2006); *Reinholtz v. Campbell*, 64 F.Supp. 2d 721 (D. Tenn. 1999).  A change in security status is likewise not enough.  *Reinholtz*, 64 F.Supp. 2d at 729.  The potential effect of a DOR on duration of sentence is merely speculative even though it may be a relevant consideration for parole eligibility.  *Sandin*, 515 U. S. at 487.[1]

---

[1] In *Sandin*, the Court reasoned:
> Nor does Conner's situation present a case where the State's action will inevitably affect the duration of his sentence. Nothing in Hawaii's code requires the parole board to deny parole in the face of a misconduct record or to grant parole in its absence, Haw.Rev.Stat. §§ 353-68, 353-69 (1985), even though misconduct is by regulation a relevant consideration, Haw.Admin.Rule § 23-700-33(b) (effective Aug. 1992). The decision to release a prisoner rests on a myriad of considerations. And, the prisoner is afforded procedural protection at his parole hearing in order to explain the circumstances behind his misconduct record. Haw.Admin.Rule §§ 23-700-31(a), 23-700-35(c), 23-700-36 (1983). The chance that a finding of misconduct will alter the balance is simply too attenuated to invoke the procedural guarantees of the Due Process Clause.

515 U.S. at 487.

**MEMORANDUM DECISION AND ORDER  9**

F.  **Conclusion**

Because Plaintiff has failed to show that he had a liberty interest in not suffering the punishment he did, he cannot challenge the due process aspects of his DOR hearing. Because there was *some* evidence that Plaintiff was guilty of the offense -- that is, he conceded at the hearing that the needle was found taped to his vent -- he cannot proceed under the arbitrary and capricious theory of *Burnsworth v. Gunderson*.  For these reasons, Plaintiff's Complaint is subject to dismissal.  The Motion for Summary Judgment shall be conditionally granted.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment (Docket No. 43) is conditionally GRANTED.  Plaintiff shall have an additional fourteen (14) days after entry of this Order in which to file a response to the Motion.

IT IS FURTHER HEREBY ORDERED that Plaintiff's Motion for Stay (Docket No. 50) is DENIED.

DATED: **December 3, 2007**

Honorable Mikel H. Williams
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER  10**